Citation Nr: 1714073 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 08-01 883 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUE

Entitlement to service connection for a pulmonary disorder other than calcification of the lungs.

REPRESENTATION

Appellant represented by: Virginia A. Girard-Brady, Esq.


ATTORNEY FOR THE BOARD

E. Mine, Associate Counsel







INTRODUCTION

The Veteran served on active duty from April 1978 to April 1982.

This matter is before the Board of Veterans' Appeals (Board) on appeal from a June 2007 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) that denied service connection for calcification of the lungs. 

By way of background, in April 2009 the Board denied service connection for calcification of the lungs. The Veteran appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court). In an August 2010 Memorandum Decision the Court affirmed the Board's denial of service connection for calcification of the lungs, but set aside the implicit denial of direct service connection for any other disorder of the lungs. The file was then remanded to the Board for additional appellate consideration.

The Veteran was scheduled to testify at a Central Office hearing in October 2011. However, in August 2011 the Veteran, through her representative, withdrew the hearing request.

The Board remanded this matter to the Agency of Original Jurisdiction (AOJ) in May 2012, May 2013, and August 2014 for additional development. The case is now back before the Board.


FINDING OF FACT

The preponderance of the evidence is against a finding that the Veteran's current pulmonary disability is etiologically related to a disease, injury, or event which occurred in service.



CONCLUSION OF LAW

The criteria for service connection for a pulmonary disorder, other than calcification of the lungs, have not been met. 38 U.S.C.A. §§ 1101, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Stegall Concerns

As noted in the introduction, the Board most recently remanded the Veteran's claim for additional development in August 2014. The Board instructed the AOJ to obtain and associate with the claims file all VA medical records pertaining to the Veteran not currently of record, dated from August 2013 to the present. The Board also directed the AOJ to return the claims file to the VA physician who had conducted a December 2012 VA examination, if available, to obtain an addendum opinion or schedule a new examination if deemed necessary. Specifically, the Board requested that the examiner indicate whether it was at least as likely as not that the Veteran's diagnosed asthma arose during service or was otherwise etiologically related to service, to include exposure to ammonia or other solvents or toxins during service.

The AOJ obtained VA medical records from August 2013 to January 2017. In September 2014, the AOJ provided the Veteran a new VA examination for pulmonary conditions. The May 2016 examination report and accompanying opinion included all of the findings requested by the Board. In a January 2017 Supplemental Statement of the Case (SSOC), the AOJ readjudicated the Veteran's claim.

Thus, the Board's prior remand instructions have been complied with. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance).

II. Duties to Notify and Assist

VA's duties to notify and assist claimants in substantiating a claim for VA benefits are found at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 and 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). 

VA's duty to notify was satisfied by an October 2012 letter. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159; see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records and VA medical records are in the file. The Veteran has not referenced outstanding records that he wanted VA to obtain or that he felt were relevant to the claims. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4)(i). The Veteran was provided a VA examinations in April 2007, December 2012, and September 2014. 

The Board observes that in a February 2017 statement, the Veteran, through her representative, argued that the September 2014 VA examination was inadequate. Specifically, the Veteran argued that the examiner failed to adequately consider the Veteran's medical history, failed to consider the Veteran's lay statements, failed to provide an adequate rationale for the opinion, and relied on a lack of medical records showing treatment following service.

The Board has considered the Veteran's contentions. A review of the September 2014 VA examination report indicates that the examiner reviewed the Veteran's claim file, which included the available private and VA treatment records. The examiner noted the Veteran's contention that she was exposed to ammonia while in service and had suffered from shortness of breath on exertion for many years. The examiner also noted the Veteran's contention that she was currently experiencing shortness of breath and occasional chest tightness, and was using albuterol three times per week, as needed. Further, although the examiner did note a lack of medical records in the rationale, stating that the Veteran's diagnosis of asthma was recent and there was no diagnosis during military service, the examiner also appeared to base the opinion on diagnostic testing conducted at the time of the examination and the Veteran's overall medical history.
 
Therefore, the Board finds the examination reports to be thorough and complete and sufficient upon which to base a decision with regards to these claims. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

III. Service Connection

A veteran is entitled to VA disability compensation if there is disability resulting from personal injury suffered or disease contracted in line of duty in active service, or for aggravation of a preexisting injury suffered or disease contracted in line of duty in active service. 38 U.S.C.A. § 1110.

Generally, to establish a right to compensation for a present disability, a veteran must show: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service, i.e. a nexus. 38 C.F.R. § 3.303(a); see also Davidson v. Shinseki, 581 F.3d 1313, 1315-16 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may be granted for a disability shown after service, when all of the evidence, including that pertinent to service, shows that it was incurred in service. 38 C.F.R. § 3.303(d).

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be more persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 Factual Background

The Veteran is seeking service connection for a pulmonary disorder which she asserts was the result of her active duty service. Specifically, the Veteran contends that while on active duty, as part of her assignment as a graphic designer, she was exposed to excessive amounts of ammonia and other chemicals for four years. See August 2006 Claim for Compensation and Pension, February 2007 statement in support, and September 2007 Notice of Disagreement.

The Veteran's service treatment records show that the Veteran was afforded an x-ray in May 1979. The Veteran was reported as asymptomatic in the clinical history. The x-ray revealed a small calcification in the Veteran's left mid lung field, which was assessed as a probable old granuloma, but other etiologies could not be ruled out. Subsequent follow-up x-rays were unchanged. See September 1979 service treatment records; October 1979 service treatment records; December 1979 service treatment records; February 1981 service treatment records.

A June 1979 service treatment record shows that the Veteran complained of a cough and burning after ammonia exposure; however, her lungs were evaluated as clear. 

In September 1979, October 1979, and November 1979 service treatment records the Veteran was noted to have no symptoms at follow-up appointments.

March 1982 service treatment records show that, during a separation examination, the Veteran's lungs and chest were evaluated as normal after pulmonary function testing (PFT); however, a chest x-ray was noted as questionable and the Veteran was referred to VA for x-rays. Similarly, in a March 1982 report of medical history given at separation, she denied asthma, shortness of breath, pain or pressure in the chest, and chronic cough.

In April 2007, the Veteran was provided with a VA examination by Dr. A.Q. The Veteran reported she had worked for four years in a locked hanger with machines that leaked an ammonia-smelling gas on a daily basis. She complained that she was unable to get a full breath, experienced shortness of breath on steps and exercising, and felt pressure in her chest. The examiner found that the Veteran's lungs were clear to asuticulation bilaterally, she had no wheezing, rales, or rhonchi. The examiner further noted that chest x-rays showed no acute infiltrates or effusions, but noted small calcific densities in the left suprahilar area, which may have represented calcified lymph nodes. The x-ray report contained the notation: MAJOR ABNORMALITY, ATTENTION ALERT. After PFTs, the examiner found normal spirometry with a small bronchodilator response. He diagnosed dyspnea, with no pulmonary condition at the time.

A VA treatment record dated in May 2009 shows that during a sleep disorder consultation, the Veteran complained that she had significant ammonia exposure in service leading to lung calcifications. She reported feeling like she was not getting enough air at night and occasional cough. She stated she was experiencing dyspnea on exertion when walking up hill, which had only started in the prior six months. The physician noted that pulmonary function testing showed moderate obstructive lung disorder. He reported that he suspected asthma as the primary cause of the Veteran's nighttime breathing issues, and prescribed amsanex and nasaline to treat the Veteran.

Pursuant to the May 2012 Board remand, the Veteran was provided with a second VA examination in December 2012 by Dr. K.V. The Veteran again reported exposure to fumes and ammonia while in service. She reported experiencing shortness of breath for years, but had not sought medical help in the previous three. She stated she was using an albuterol inhaler as needed, but it was not working. After an examination, which included PFTs and chest x-rays, the examiner found that the Veteran did not have a pulmonary disease. The examiner noted that the chest x-ray showed prior granulomatous exposure, but stated that the Veteran had clear lungs, and there had been no change since September 2009. The examiner stated that the PFTs showed mild restrictive defect, but that it was likely due to obesity/poor effort, and noted improvement since 2009. The examiner stated that exposure to fumes or ammonia can aggravate asthma and cause bronchitis/COPD, but noted that the Veteran had none of those conditions. The examiner opined that, considering all, it was less likely than not that the Veteran has any residual pulmonary problems or dyspnea related to her military service. Finally, in a June 2013 addendum opinion, provided in response to a May 2013 Board remand, Dr. K.V. clarified that dyspnea was a symptom, not a diagnosis or disability by itself.

A VA treatment record dated in February 2013 shows a diagnosis of mild asthma. The physician noted that the Veteran presented with shortness of breath when going upstairs and with activity. The Veteran reported a history of lung calcification and of ammonia exposure during her time in the Air Force. She stated that she felt her shortness of breath was a bit more pronounced; however, she denied coughing, wheezing, PND, or orthopnea. The physician reviewed December 2012 x-rays and noted prior granuloma exposure, but indicated the Veteran had clear lungs and no change. Likewise, he reviewed December 2012 PFTs and interpreted a mild restrictive defect, normal TLC, no bronchodilator response, and moderate reduction of diffusing capacity. The physician diagnosed mild asthma and prescribed the Veteran symbacort and albuterol.

Pursuant to the August 2014 Board remand, the Veteran was provided a third VA examination in September 2014 by Dr. T.T. The examiner noted that the Veteran had exposure to fumes and ammonia while working in a building in which ammonia was used as a chemical reagent. The examiner noted that there was no history of occupational exposure to chemicals or irritants. The examiner noted that the Veteran had reported shortness of breath on exertion for many years, and had a diagnosis of asthma in 2009, which was being treated with albuterol as needed. The examiner reported that there was no previous diagnosis or treatment of asthma in service. The Veteran reported that she was currently experiencing shortness of breath with prolonged exertional activities and changes in weather, especially humidity, which was associated with occasional chest tightness. She stated she used albuterol three times per week as needed. Chest x-rays were taken and compared with the December 2012 study. The examiner found that the pulmonary vasculature and mediastinum were within normal limits and no acute infiltrates or effusions were noted. The examiner noted no significant interval change and no active pulmonary disease. After examination, which included PFTs, the examiner diagnosed asthma. However, the examiner opined that recent PFTs did not show results consistent with an obstructive lung pattern like asthma, and the PFTs conducted during the current VA examination were normal, without a bronchodilator response, and not consistent with asthma pattern. The examiner further opined that the Veteran's asthma was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. She noted that the Veteran had a diagnosis of asthma recently made, many years after the veteran had left the military, and there was no diagnosis of asthma in military. The examiner opined that the Veterans current asthma is less likely related to military service. The examiner further opined that the Veteran's asthma is less likely etiologically related to service, to include exposure to ammonia or other solvents or toxins during service.

The Veteran reported having a history of lung scarring with exposure to ammonia in a December 2014 VA treatment record.

A December 2014 buddy statement was submitted on behalf of the Veteran by F.B., the officer in command of the Veteran's duty station during the time of her active duty service. F.B. stated that during his time of command the audio-visual personnel were continually exposed to ammonia fumes.

Finally, in a September 2016 VA treatment record, the Veteran reported a history of "sc chemical fibrosis secondary to ammonia exposure." She reported mild asthma, and stated she took symbicort and albuterol as needed, but had been out of this for months. The Veteran noted her breathing was problematic, especially at night. She denied cough, shortness of breath, or other pulmonary problems.

 Analysis

Initially, the Board notes that the evidence of record shows that the Veteran has a calcification, demonstrated as a granuloma, in her left lung, the Board has previously denied service connection for calcification of the lungs, which was upheld by the Court. See April 2009 Board Decision; August 2010 Memorandum Decision. As no change in the granuloma has been noted in the medical evidence of record, the Board will not address it here.

As noted above, to establish service connection for the claimed disorder on a direct basis, there must be evidence of: (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the two. See Shedden, 381 F.3d at 1167. Upon review of the evidence of record, the Board concludes that entitlement to service connection for a pulmonary disorder is not warranted as a nexus between the Veteran's military service and her current pulmonary disorder is not shown. As discussed below, although there is a current diagnosis of a pulmonary disorder, and there is evidence of an in-service exposure to ammonia or other chemicals, the most probative and persuasive evidence does not show a relationship between the in-service event and the current diagnosis.

With respect to the first Shedden element, as noted above in VA treatment records dated in February 2013 and a VA examination dated in September 2014, the Veteran has a current diagnosis of asthma.

As to the second Shedden element, a review of the Veteran's service treatment records do not show that the Veteran was treated or diagnosed with a lung disorder while in service. Likewise, the evidence of record does not show that there is any continuity of treatment over a two decade time span between separation from service and her diagnosis and treatment for a lung disorder beginning in 2009. See 38 C.F.R. § 3.303. As such, in-service disease has not been shown for the claimed disorder. However, the Veteran's lay statements and service treatment records establish that she was exposed to ammonia during active duty service. See June 1979 service treatment records, August 2006 Claim for Compensation and Pension, February 2007 statement in support, and September 2007 Notice of Disagreement. The Veteran's contention is further supported by the December 2014 buddy statement submitted by F.B. Therefore, the Board finds that the second Shedden element has been satisfied.

However, turning to the third Shedden element, the weight of the evidence is against a finding that the Veteran's current lung disability is etiologically related to her active duty service.

Significantly, at the time of separation from service, the Veteran's chest and lungs were evaluated as normal and the Veteran herself denied experiencing asthma, shortness of breath, pain or pressure in her chest, or a chronic cough in her March 1984 report of medical history. The Board recognizes that the Veteran complained of cough and burning after ammonia exposure while in service; however, at the time of her complaint, her lungs were evaluated as clear and no diagnosis of a lung disorder accompanied the complaint. See June 1979 service treatment records. Service treatment records do not otherwise reflect an in-service diagnosis of a respiratory or pulmonary disorder. 

The Board acknowledges the Veteran's contentions that her lung disorder and the associated symptoms are related to an in-service exposure to ammonia or other chemical agents. See December 2014 VA treatment records; September 2016 VA treatment records. Although the Veteran might sincerely believe that his disorders are related to her exposure during service, as a layperson, her statements are not competent evidence regarding the etiology of the claimed conditions. See Barr, 21 Vet. App. at 307 (noting that lay testimony is competent to establish observable symptomatology but not competent to establish medical etiology or render medical opinions). And while the Veteran is competent to report symptoms capable of lay observation, she has not been shown to be competent to render an opinion as to the etiology of her lung disorder, as such an opinion requires medical expertise which he is not shown to possess. Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed.Cir.2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis).

While the Veteran has been provided with several VA examinations during the period on appeal, the most recent September 2014 opinion is the only on that directly addresses the Veteran's diagnosed asthma. As noted above, the examiner specifically found that it was less likely than not that the Veteran's asthma was etiologically related to her service, to specifically include exposure to ammonia or other solvents or toxins during service. The record contains no competent positive medical nexus opinion etiologically linking the Veteran's asthma with her active duty service. The Board finds the only competent medical evidence of record is against a finding that the Veteran's pulmonary disorder is etiologically related to her active duty service.

The Veteran has submitted no competent nexus evidence contrary to the VA examiner's opinion. The Veteran has been allowed ample opportunity to furnish medical evidence in support of her claim, but she has not done so. 38 U.S.C.A. 
§ 5107(a) (claimant bears responsibility to support a claim for VA benefits).

In sum, upon careful review and weighing of the evidence, with reasoning as detailed above, the Board finds that the preponderance of the evidence is against the claim for service connection of a lung disorder, and the benefit of the doubt doctrine is not for application. See generally Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed Cir. 2001). The appeal must therefore be denied.



ORDER

Entitlement to service connection for a pulmonary disorder other than calcification of the lungs is denied.




____________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs